UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

_____
                                   )
**FEDERICO SALINAS-RODRIGUEZ**, *et al.* )
                                   )
            PLAINTIFFS,            )
                                   )
v.                                 )   Case No. 3:05 CV 440 WHB-AGN
                                   )
**ALPHA SERVICES, L.L.C.**, *et al.*  )
                                   )
            DEFENDANTS.            )
_____)

**PLAINTIFFS' MEMORANDUM IN
SUPPORT OF APPROVAL OF SETTLEMENT**

The parties have settled this class action and now ask the Court to approve the settlement, as required by Fed. R. Civ. P. 23(e). A copy of the settlement is attached hereto as Exhibit 1.

This case involved claims that the Plaintiffs and class members were subjected to a number of violations of the federal Migrant and Seasonal Agricultural Worker Protection Act ("AWPA") by Defendants during the 2002, 2003, 2004, 2005, and 2006 seasons of the Defendants' forestry operations. The principal complaints related to the Defendants' time-keeping and pay practices. The Defendants did not reimburse their employees who traveled from Mexico, Guatemala and Ecuador certain travel, recruitment, and visa processing expenses to the extent that those costs reduced the Plaintiffs' wages below the federally mandated minimum wage. See Arriaga v. Florida Pacific Farms, LLC, 305 F.3d 1228 (11th Cir. 2002). In addition, Plaintiffs claim that the Defendants did not augment the piece-rate earnings of their H-2B workers to ensure that

they received the appropriate hourly prevailing wage and overtime pay for all hours worked.

The parties met for settlement talks on January 25, 2006, using a qualified, paid mediator. After a full day of negotiation, the parties reached an initial mediated settlement agreement. It took several more months of negotiating to produce the Settlement Agreement that is now before the Court.

Notice of the proposed settlement, the opportunity to object to the settlement, and the fairness hearing scheduled for September 5, 2006, has been sent to the class members. See Exhibit 2. No one has filed an objection to the settlement, and no one has opted out of the certified class.

## ARGUMENT

### I.  A Class Action Settlement Should be Approved if the Settlement Is Fair, Adequate, and Reasonable.

Federal Rule of Civil Procedure 23(e) requires the Court's approval of the compromise of a class action. It is well established that the court will not approve a settlement unless it is found to be fair, adequate, and reasonable. Reed v. General Motors Corp., 703 F.2d 170, 172 (5th Cir. 1983).

In considering a proposed settlement, the Court is not called upon to decide the case on the merits because "'the very purpose of the compromise is to avoid the delay and expense of such a trial.'" Id. (quoting Young v. Katz, 447 F.2d 431, 433 (5th Cir. 1971). Rather, the Court is asked to determine if the settlement is a reasonable compromise, recognizing that in settlement a party will receive less than might conceivably be won after a trial on the merits. In making its assessment, the court is entitled to rely on the judgment of the parties in approving the proposal and should be

2

hesitant to substitute its own judgment for that of counsel. Lelsz v. Kavanagh, 783 F. Supp. 286, 297 (N. D. Tex. 1991).

In settlement, of course, plaintiffs will receive less than they might have received if the case was litigated to the end and plaintiffs won at every step. "[C]ompromise is the essence of a settlement." Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir. 1977). Thus, in a fairness hearing a court "should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." Id. (internal quotations omitted). One court put this perspective on the issue:

> the Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush.

In re Shell Oil Refinery, 155 F.R.D. 552, 560 (E.D. La. 1993) (quoting Oppenlander v. Standard Oil Co., 64 F.R.D. 597, 624 (D. Colo. 1974) (internal quotations omitted)).

In assessing whether a settlement is "fair, adequate, and reasonable," the Fifth Circuit has determined that a court should consider six factors: (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the opinions of the participants, including class counsel, class representatives, and the absent class members. Reed, 703 F.2d at 172. Another factor that may be considered is the defendant's inability to pay an amount greater than

3

the proposed settlement.  In Re Catfish Antitrust Litigation, 939 F. Supp. 493, 497 (N.D. Miss. 1996).

As shown below, when those factors are applied, the settlement of this case should be approved as fair, adequate, and reasonable.

### A. Evidence that the settlement was obtained by fraud or collusion

All parties have been vigorously represented by experienced counsel.  Counsel for the Plaintiffs are experienced in the representation of farmworkers and forestry workers in civil matters and are well qualified to evaluate the fairness of the proposed settlement on behalf of the members of the class.  The initial settlement was reached through extensive negotiation between counsel for the Plaintiffs and counsel for the Defendants during a day-long mediation conducted by a qualified mediator and codified in the final Settlement Agreement after literally months more of negotiations.  The settlement agreement before the Court was made at arm's length and is free of fraud or collusion between the parties.

The fact that Plaintiffs' counsel waived their claims for costs and attorneys' fees provides further evidence that the negotiated settlement is free of fraud or collusion.  If the Plaintiffs had prevailed in this action at trial, they would have been entitled to an award of attorneys' fees incurred with respect to their claims under the Fair Labor Standards Act.  The Plaintiffs also would have been entitled to recover their costs.  The Plaintiffs estimate that these costs and fees exceeded $125,000 at the time of settlement and would have exceeded $400,000 after proceeding through trial.  Plaintiffs' counsel is a nationally-recognized, non-profit civil rights organization that accepted this case on a pro bono basis in order to vindicate the rights of vulnerable migrant workers.

In order to maximize the funds distributed to the forestry workers employed by the Defendants, the Plaintiffs' counsel have agreed as part of the settlement to forego these costs and fees. This is a substantial benefit to the class, because it means that the limited moneys that the Defendants have available to resolve this litigation on a class-wide basis will be paid to the class members. Furthermore, due to the indigency of the class members, a guaranteed payment of a sum certain is particularly important.

### B.     The complexity, expense and likely duration of the litigation

This litigation was unusually complicated in relation to the stakes at issue and the logistics involved. As demonstrated by the parties' extensive briefing thus far in this litigation, it is likely that the parties would continue to be engaged in extensive arguments about both the relevant factual and legal issues if this case proceeded through trial.

In addition, most of the class members are Mexican or Guatemalan nationals residing abroad. It would have been impossible for most of the class members to travel to Jackson, Mississippi for a trial. While the trial testimony of the class members could have been offered through deposition, the cost of such depositions would be enormous, especially for those class members residing abroad.

Furthermore, many of the Defendants' key supervisory employees are also Mexican or Guatemalan nationals residing abroad. Securing deposition testimony from these individuals would also prove to be a difficult and costly undertaking. Former supervisors residing abroad are not even subject to the subpoena powers of this Court.

This litigation, if it had continued, would have been prolonged and expensive. Plaintiffs' counsel were particularly concerned that continued litigation would increase

5

the amount of litigation expenses and build up the claim for attorneys' fees, without gaining significant additional benefits for the class.

### C. The stage of the litigation and available discovery

This settlement came after a Fair Labor Standards Act collective action was certified by the Court and after several depositions had been conducted and numerous documents had been produced by the Defendants. Moreover, Plaintiffs' counsel have a wealth of information gained from litigating other AWPA cases against forestry contractors. The Plaintiffs have adequate information to make reasonable estimates about the benefits and risks of continuing with the litigation.

### D. The probability of Plaintiffs prevailing on the merits

Plaintiffs and class members faced a significant risk that they would receive nothing at all if the case was litigated to judgment. Key problems with the case include the following:

<u>Difficulty Proving Number of Hours Actually Worked</u>

Plaintiffs recognized in reaching a settlement in this matter that it would be difficult to prove the actual number of hours for which Plaintiffs and class members were not compensated because the Defendants' payroll records are believed to have been falsified. If this case were litigated through trial, it would be difficult for Plaintiffs to show: (1) which class members were entitled to payments to augment their piece-rate earnings so that they received the appropriate prevailing wage for each hour worked; (2) how much those payments should be; (3) which class members should be paid overtime; and (4) how much those overtime payments should be.

In settling this lawsuit, Plaintiffs considered the obstacles that they would face at trial to show that the class was not paid wages owed when due under the theory presented in this case. These considerations prompted Plaintiffs to reach early settlement in this matter because Plaintiffs recognized that failure to prove their claims would result in a substantial loss for them and the class members.

### Possibility that the 11th Circuit's Decision in Arriaga v. Florida Pacific Farms, LLC Would Not Be Applied to H-2B Workers

It is not certain that this Court, or the Fifth Circuit Court on appeal, would choose to apply the Eleventh Circuit's holding in Arriaga v. Florida Pacific Farms, LLC, 305 F.3d 1228 (11th Cir. 2002), to H-2B workers. The Arriaga case holds that H-2A guest workers' travel and visa expenditures must be reimbursed to the extent they reduce workers' first week wages below the federal minimum. Even though the Arriaga decision is explicitly based on the Fair Labor Standards Act and not on the H-2A program's regulations, it is possible that Plaintiffs could lose on this issue.

A substantial portion of the damages of the Plaintiffs and class members is attributed to Defendants' failure to reimburse their inbound travel costs in their first week of work. If Plaintiffs were not allowed to recover for these costs, their damage claims would be drastically reduced.

### Pending Class Status

The Plaintiff class still had not been certified at the time of mediation. Therefore, if mediation failed, Plaintiffs still had to overcome the hurdle of getting the class certified by this Court. If the class was not certified, then only those individuals who affirmatively opted into this action under the FLSA would be eligible for relief. Furthermore, it would be questionable whether those named plaintiffs would be entitled to injunctive relief –

7

that would presumably benefit all of Defendants' H-2B workers – if they did not plan to work for the Defendants in the future.

While Plaintiffs' counsel believe that the Plaintiffs have a good chance of prevailing if the case proceeds to trial, litigation is uncertain and success could not be assured – primarily for the reasons outlined above. The Plaintiffs estimate a 55-70 percent change of prevailing on all of their substantive claims had this matter proceeded to trial. There is a sufficient risk to each side that the outcome of continued litigation is unpredictable, and the substantial risk to each side as to the ultimate outcome strongly favors settlement.

### E.     The range of possible recovery and certainty of damages

In theory, the class members could have received nothing up to a judgment of $500,000 – the limit for statutory damage awards in class actions under the AWPA. See 29 U.S.C. § 1854(c)(1)(B). However, the amount of statutory damages awarded is within the sound discretion of the Court, and in previous cases courts have considered the size and scope of the defendant's operations, among other things, in assessing statutory damages. Given the Defendants' limited financial resources, it is entirely possible that a sum well under $500,000 would be awarded. The Court might also reduce the statutory damages amount based on the fact that many class members are not likely to be located. Even though a court may award up to $500 per violation of the AWPA, 29 U.S.C. § 1854(c), the maximum of $500 is not the norm. See e.g., Aviles v. Kunkle, 765 F. Supp 358, 368 (S.D. Tex. 1991). Plaintiffs' counsel estimate that the class settlement is worth approximately half of what class members might receive at trial.

The Defendants' economic situation greatly influenced the decision to settle this matter. Prior to the mediation, the Defendants provided Plaintiffs' counsel with their most recent financial statements. Plaintiffs' counsel reviewed those statements at great length and determined that the Defendants have limited assets against which a sizeable judgment could be collected. Even if class members received a judgment of $500,000 for their AWPA damages, it is very likely that the class members would not be able to recover that judgment given the Defendants' limited financial resources and the fact that a substantial portion of those resources, if not all, would be spent on Defendants' own attorneys' fees and litigation costs incurred up to and through trial.

The injunctive relief obtained through this settlement is of considerable value to those class members who may work on the Defendants' operations in the future. The consent injunction is considerably more detailed and comprehensive than any injunction the Court might enter at the conclusion of trial. The injunction clarifies the defendants' responsibilities under the AWPA. The settlement also provides a mechanism by which Plaintiffs' counsel may audit the employment practices of the Defendants through the 2006-2007 and 2007-2008 forestry seasons. Finally, it provides a means by which workers employed by the Defendants in the future may seek this Court's assistance through contempt proceedings to redress and correct serious violations of the AWPA.

In sum, the Plaintiffs and class members faced a situation in which, if they won on all of their claims, they would obtain a judgment that would have been largely uncollectible. A successful trial would have resulted in an injunction less favorable to the class members than the consent injunction agreed to by the Defendants in mediation.

Under these circumstances, the monetary settlement, coupled with excellent injunctive relief, was a reasonable compromise of the class members' claims.

### F. The opinions of class counsel, class representatives and absent class members

The settlement was presented to the Court after long, hard-fought negotiations between the parties; both sides endorse the settlement, including Plaintiffs' counsel and the class representatives.

As ordered by this Court, Plaintiffs' counsel distributed notice to the class members regarding the proposed settlement, the opportunity to object to the settlement, and the fairness hearing scheduled for September 5, 2006. To date, no one has filed an objection with the Court, and no one has opted out of the certified class.

In sum, looking at all of these factors, the settlement negotiated by the parties is adequate, fair, and reasonable. It is what one would expect in a settlement – possibly less than what the class would receive if Plaintiffs won at every point in litigation that went on for years, but far more than what the class would receive if Plaintiffs lost the case. Besides monetary relief, it also includes substantial and far-reaching injunctive relief that will benefit forestry workers employed by the Defendants in future seasons.

## CONCLUSION

For the reasons set forth above, the Plaintiffs respectfully request that the Court approve the parties' settlement, as set out in the attached Settlement Agreement, as fair, adequate, and reasonable.

Respectfully submitted,

FEDERICO SALINAS-RODRIGUEZ, *et al.*

s/Kelley M. Bruner_____

Mary C. Bauer
*Pro Hac Vice* Bar Number 44495
Kelley M. Bruner
*Pro Hac Vice* Bar Number 44496
Andrew Turner
*Pro Hac Vice* Bar Number 44497
Immigrant Justice Project
Southern Poverty Law Center
400 Washington Avenue
Montgomery, Alabama 36104
334-956-8200
334-956-8481 (fax)
mbauer@splcenter.org
kbruner@splcenter.org
aturner@splcenter.org

Richard T. Conrad III
Mississippi Bar Number 10648
Armstrong Allen, PLLC
P.O. Box 14028
Jackson, MS  39236-4028
(601) 713-6304
(601) 713-2049 (fax)
rconrad@armstrongallen.com

Attorneys for Plaintiffs

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on September 1, 2006, I electronically filed the foregoing with the Clerk of Court using the ECF system.


s/Kelley M. Bruner
Attorney for Plaintiffs