UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | |
|---|---|
| FEDERICO SALINAS-RODRIGUEZ, *et al.* <br><br> PLAINTIFFS, <br><br> v. <br><br> ALPHA SERVICES, L.L.C., *et al.* <br><br> DEFENDANTS. | Case No. 3:05 CV 440 WHB-AGN |

### SETTLEMENT AGREEMENT

This **SETTLEMENT AGREEMENT** is entered into by and among Federico Salinas-Rodriguez, Malaquias Astello-Guevara, Juan Hernandez-Hernandez, Valentin Salinas-Castro, Javier Astello-Mendez, Marco Antonio Salinas-Rodriguez, Ramiro Gonzalez-Felipe, Jose Isabel Lopez-Sanchez, Casimiro Rodriguez-Garcia, J. Jesus Lopez-Sanchez, and Roberto Salinas-Castro (hereinafter, "Plaintiffs"), and Defendants Alpha Services, L.L.C. and Robert Wade Zaharie (hereinafter, "Defendants") who agree and stipulate as follows:

**WHEREAS**, Plaintiffs have brought the above-styled complaint on behalf of themselves and all others similarly situated alleging violations of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA") and the Fair Labor Standards Act ("FLSA") against Defendants; and

**WHEREAS**, the Plaintiffs maintain that they would ultimately prevail on all issues in this action but have reached what their counsel believes is a fair and reasonable

1

settlement with Defendants, taking into account the assets of these Defendants and the evidence obtained through this litigation;

WHEREAS, Defendants, maintain that they would ultimately prevail on all issues in this action but have reached what their counsel believes is a fair and reasonable settlement, and Defendants wish to end a prolonged and expensive litigation, and

WHEREAS, the Plaintiffs and Defendants desire to resolve amicably, completely and forever all disputes between them without additional delay and without the expense occasioned by litigation;

**NOW THEREFORE, IT IS STIPULATED AND AGREED** by and among the Parties to this Settlement Agreement that this controversy shall be settled and compromised, subject to Court approval, upon the terms and conditions set forth below:

## I. DEFINITIONS

1. As used herein, the following terms shall have the following meanings:

    a. The term "Opt-In Plaintiffs" means any non-supervisory workers admitted as H-2B temporary foreign workers pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(b), who have filed with the Court a consent to sue form under the Fair Labor Standards Act on or before July 13, 2006, and were employed by the Defendants within three years of the filing of his consent to sue form.

    b. The term "Class Members" means all those individuals admitted as H-2B temporary foreign workers pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(b), who were employed by the Defendants in any capacity between April 14, 2002 and the present.

## II.  CLASS CERTIFICATION

2.      For the purpose of settlement, Defendants agree to class certification under Rule 23(b)(3) with respect to the AWPA claims presented in Count I of the First Amended Complaint. The settlement class is defined as "all those individuals admitted as H-2B temporary foreign workers pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(b), who were employed by the Defendants in any capacity from April 14, 2002 through the present."

## III.  CONSIDERATION FOR SETTLEMENT

3.  <u>Payments To Named Plaintiffs And Opt-In Plaintiffs Alejo Carmelino Perez and Wiliam Tomas.</u>

   a. Defendants shall pay or cause to be paid to each of the original eleven (11) named Plaintiffs through their counsel, the Southern Poverty Law Center, Six Thousand Dollars ($6,000.00) and no more for an aggregate sum of Sixty-Six Thousand Dollars ($66,000.00).

   b. Defendants shall pay or cause to be paid to Opt-In Plaintiffs Alejo Carmelino Perez and William Tomas through their counsel, the Southern Poverty Law Center, a sum of Three Thousand Dollars ($3,000.00) each and no more for an aggregate sum of Six Thousand Dollars ($6,000.00).

   c. These sums shall be paid in the name of "Southern Poverty Law Center Trust Account" and submitted to Plaintiffs' Counsel within two (2) weeks of the Court's approval of this Settlement Agreement or by July 14, 2006, whichever date is later.

4.  <u>Payments To Other Opt-In Plaintiffs.</u>  Defendants agree to make payments

3

to each Opt-In Plaintiff who files his consent to sue form with the Court between January 25, 2006 and July 13, 2006. The three-year statute of limitations of claims will run from the time any such Opt-in Plaintiff files his consent to sue form with the Court. All such Opt-In Plaintiffs shall be paid in the following manner:

a. In recognition that the travel costs of the Opt-In Plaintiffs vary according to their point of embarkation, Guatemalan, Panamanian or Ecuadorian Opt-In Plaintiffs shall receive a maximum of Two Thousand Five Hundred Dollars ($2500.00) each per season, and the Mexican Opt-In Plaintiffs shall receive a maximum of One Thousand Five Hundred Dollars ($1500.00) each per season, so long as the total payment of the maximum to such Opt-in Plaintiffs does not exceed Thirty-Five Thousand Dollars ($35,000.00).

b. If the total to be paid such Opt-In Plaintiffs exceeds Thirty-Five Thousand Dollars ($35,000.00), then the amount paid to each Guatemalan, Panamanian or Ecuadorian Opt-In Plaintiff shall be reduced, proportionately, to no less than One Thousand Five Hundred Dollars ($1500.00) per season, and the amount paid to each Mexican Opt-In Plaintiffs shall be reduced, proportionately, to no less than Five Hundred Dollars ($500.00) per season.

c. Defendants shall submit the aggregate sum of Thirty-Five Thousand Dollars ($35,000.00), paid in the name of "Southern Poverty Law Center Trust Account," to Plaintiffs' Counsel within two (2) weeks of the Court's approval of this Settlement Agreement or by July 14, 2006,

whichever date is later.

 d. If paying the minimum amount for each Opt-In Plaintiff exceeds Thirty-Five Thousand Dollars ($35,000.00), any available undistributed class funds shall first be used to make up the difference. Otherwise, Defendants shall promptly be required to pay enough money to the Southern Poverty Law Center so that all Opt-In Plaintiffs receive at least the minimum amounts, as set forth above.

 e. Any undistributed funds shall ultimately be returned to the Defendants.

5.  <u>Payments To Class Members</u>. Defendants agree to make payments to each class member who was paid or owed at least three (3) weekly paychecks. All such class members shall be paid in the following manner:

 a. Defendants shall pay or cause to be paid a sum of Two Hundred Dollars ($200.00) per class member per season worked.

 b. Defendants will review their records and determine the amount due under this formula. Plaintiffs will have full review of all records to verify the amount due under this formula. If the parties agree on this amount, it will become the total due under this provision (Class Total). If the parties cannot agree, the issue will be presented for the Court's determination of the Class Total.

 c. Defendants shall submit the class payments to Plaintiffs' Counsel in monthly installments of Eleven Thousand Dollars ($11,000.00), paid in the name of "Southern Poverty Law Center Trust Account," with the first installment due on January 31, 2007. Defendants shall

continue to submit payments of Eleven Thousand Dollars ($11,000.00) to Plaintiffs' Counsel on the last business day of each month thereafter until the Class Total is paid.

d. In any month in which funds are not needed to pay any waiting class members, Plaintiffs' Counsel shall notify Defendants and reduce accordingly any payment otherwise required.

e. Plaintiffs shall have two (2) years from the date of the Court's approval of this Settlement Agreement in which to distribute these funds. If at this time, Defendants have not paid the Class Total because of the operation of paragraph 5(d), then Defendants have no further obligation to pay the remainder of the Class Total.

f. Any undistributed funds shall first be used to fund the minimum payments to the Opt-In Plaintiffs who file their consent to sue forms with the Court between January 25, 2006 and July 13, 2006, as set forth in paragraph 4. Any remaining undistributed funds shall be returned to Defendants.

6. <u>Entry Of Injunction Under The Migrant And Seasonal Agricultural Worker Protection Act</u>: An integral and central component of this Settlement Agreement is the adoption of practices designed to ensure that Defendants shall fully comply with the requirements of the Migrant and Seasonal Agricultural Worker Protection Act. Accordingly, Defendants agree to the entry against each of them of an injunction under the Migrant and Seasonal Agricultural Worker Protection Act. This injunction, if approved by the Court, will provide that Defendants shall, in the course of any

employment or labor contracting activities with any seasonal or migrant agricultural worker, such as their forestry workers, do the following:

    a.    With respect to each migrant or seasonal agricultural worker, make, keep and preserve for three years data showing for each workweek the following data: the worker's name, full permanent address (to include the town, municipality, state and country), Social Security number, total hours worked on a daily basis, the piece-rate or hourly rate paid, the number of piece-work units earned, the total pay period earnings, and any withholdings from wages and the purpose for each such withholding;

    b.    Provide to each migrant or seasonal agricultural worker at each payday a written statement relating to his or her employment during the pay period showing the following information: the employer's name, address and Internal Revenue Service employer identification number, total hours worked on a daily basis, the piece-rate or hourly rate paid, the number of piece-work units earned, the total pay period earnings, and any withholdings from wages and the purpose for each such withholding;

    c.    Properly record and compensate all compensable hours worked, specifically including time spent traveling between worksites, time engaged to be waiting at the worksites, and time spent on any compensable preliminary and/or postliminary work;

    d.    Pay each and every migrant or seasonal agricultural worker, at

    least the proper prevailing wage for all compensable hours worked and at least the proper overtime wage for all compensable hours worked in excess of forty (40) in a given workweek; and

  e. Apply the decision in <u>Arriaga v. Florida Pacific Farms, L.L.C</u>, 305 F.3d 1228, 1232 (11th Cir. 2002), to their H-2B forestry workers such that each worker is reimbursed by the Defendants in the first work week of each season for reasonable costs incurred by the worker to come to work for Defendants, including incoming transportation expenses, visa processing expenses (including visa reciprocity fees and consular interview fees), application expenses, and border crossing fees – to the extent such expenses reduce the worker's first week wages below the applicable wage under the Fair Labor Standards Act – during the 2006-2007 and 2007-2008 seasons, unless the U.S. Supreme Court rules that the <u>Arriaga</u> decision is inapplicable to H-2B workers.

  7. <u>Agreement Not To Retaliate</u>. Defendants acknowledge their obligation under the FLSA and the AWPA not to blacklist, threaten or discriminate against Plaintiffs and Opt-In Plaintiffs, as required by 29 U.S.C. § 1855(a), and not to discharge or in any manner discriminate against Plaintiffs and Opt-In Plaintiffs for asserting their FLSA rights, as required by 29 U.S.C. § 215(a)(3).

  Defendants further agree not to report the original eleven (11) named Plaintiffs or the Opt-In Plaintiffs Alejo Carmelino Perez and Wiliam Tomas to the U.S. Consulate for malfeasance.

Defendants agree to promptly inform all of their current and former recruiters, including but not limited to Gloria Solis and Cipriano Molina of Del Al & Associates or Del Al Mexico, that this dispute has been amicably resolved and instruct such recruiters that they should not engage in any form of retaliation or blacklisting against the eleven (11) original named Plaintiffs or Opt-In Plaintiffs Alejo Carmelino Perez and Wiliam Tomas.

8. <u>Agreement Not to Hold Passports</u>. Defendants specifically will not require that any of their workers surrender (either temporarily or permanently) passports or other identification documents to the Defendants or any of their employees or agents. Defendants agree to include in their disclosures given to all employees a statement that they shall not require that any of Defendants' H-2B workers surrender (either temporarily or permanently) passports or other identification documents to the Defendants or any of their employees or agents. Defendants may, however, offer to have a crew foreman collect the workers' passports for safekeeping.

9. <u>Disclosure of Recruiting Fees and Agreement Not to Require Collateral</u>. Defendants agree to continue to specifically instruct their supervisors, recruiters, and any other agents they authorize to do anything with respect to the recruitment, hiring, processing, interviewing, transportation or supervision of any current or future H-2B workers employed by Defendants (or applicants for H-2B jobs with the Defendants) that they shall not seek, obtain or accept deeds, deposits of money or any other kind of collateral from Defendants' current, future or prospective H-2B workers. Defendants will include a statement in their disclosures that no one is permitted to require employees to provide deeds, deposits or any other kind of collateral as a condition of obtaining

9

employment with Defendants. Defendants further agree to include a provision in their disclosures that that failure or refusal to comply with all directives of this paragraph will result in disciplinary action up to and including the non-compliant employee's or agent's termination and discharge from any employment with the Defendants. Defendants further agree to instruct all employees, recruiters or agents that any recruiting or processing fee to be charged to H-2B workers or applicants identified above must be expressly disclosed in writing to the worker.

10. <u>Notice to the Class</u>. In order to provide actual notice to as many class members and potential Opt In Plaintiffs as possible, Defendants have granted Plaintiffs' Counsel access to Defendants' employment files, including forms I-9 and W-4, for the purpose of determining addresses and telephone numbers of the class members and potential Opt-In Plaintiffs. Furthermore, Defendants agree to promptly contact their current and former recruiters, ask them for the permanent addresses and telephone numbers of the class members and potential Opt-In Plaintiffs, and make such information available to Plaintiffs' Counsel by April 28, 2006.

11. <u>Access to Payroll Records</u>. Defendants shall make available upon request of Plaintiffs' Counsel any and all necessary payroll data needed to identify the class members or potential Opt-In Plaintiffs or to compute the amounts due each potential Opt-In Plaintiff under this Settlement Agreement.

12. <u>Auditing of Defendants' Employment Practices</u>. Beginning in December 2006, Plaintiffs' Counsel shall have to right to audit the employment practices of the Defendants. Plaintiffs' Counsel shall have the right to audit the employment practices of Defendants under the FLSA and AWPA periodically through the 2006-2007 and 2007-

2008 seasons.

    a. Defendants agree to provide necessary assistance to enable Plaintiffs' Counsel to conduct their audits in the manner Plaintiffs' Counsel so desire. There shall be no restrictions as to the scope of any audits by Plaintiffs' Counsel.

    b. Upon request by Plaintiffs' Counsel, Defendants shall provide the locations of their employees, including transient work crews, so that Plaintiffs' Counsel may speak directly to workers, supervisors and personnel.

    c. During the time period in which the Court retains jurisdiction, Defendants shall be given sixty (60) days to remedy any problems discovered by Plaintiffs' Counsel before Plaintiffs' Counsel file a motion to hold Defendants in contempt of the consent order.

13. <u>Waiver and Release</u>. In consideration for the obligations assumed herein by Defendants, the Plaintiffs shall release Defendants from any further liability for all claims raised or asserted in this action, or which could have been raised or asserted in this action with regard to the matters encompassed therein, or any related administrative proceedings.

14. <u>Costs and Attorneys' Fees</u>. The Parties agree to bear their own costs and attorneys' fees.

## IV. COURT APPROVAL AND ENFORCEMENT OF SETTLEMENT AGREEMENT

15. <u>Consent Order</u>. The Parties agree that the Court shall enter this Settlement Agreement as a Consent Order, which dismisses this action with prejudice, except that

the Court will expressly retain jurisdiction for the sole purpose of enforcing the terms of this Settlement Agreement. The Court shall have jurisdiction to enforce the terms of this Settlement agreement until December 31, 2007.

16. <u>Submission of Settlement Agreement to the Court</u>. The Parties agree to use their best efforts to obtain entry of this Settlement Agreement by the Court. The Parties shall promptly submit this Settlement Agreement to the Court and jointly request the Court to enter its order in the form of Exhibit A attached hereto.

17. <u>Collateral Attacks</u>. The Plaintiffs and their Counsel will cooperate with the Defendant in resisting any collateral attack on the judgment contemplated in this Settlement Agreement.

18. <u>Effect of Failure to Consummate Settlement</u>. If the settlement contemplated hereby is not consummated because of the Defendants' default on their payment obligations under this Settlement Agreement, then Plaintiffs' Counsel shall be entitled to immediately seek the Court's assistance to enforce such payment obligations. Should the Defendants be found by the Court to be in breach of their payment obligations under this Settlement Agreement, the Defendants shall be responsible for the costs incurred in enforcement of this Settlement Agreement, including reasonable attorneys' fees.

If settlement on behalf of the unnamed class members is not consummated because the Court does not enter a final judgment and order, then the case shall thereupon be deemed to have reverted to its respective status as of the date the settlement is entered.

19. <u>Final Order To Be Entered Upon Approval of the Settlement</u>. If the Court enters its Order in the form of attached Exhibit A, or any other form thereof agreeable to

the Parties, and the Court approves the settlement embodied in this Settlement Agreement without modification, then a final order shall be entered in this action:

    a. Approving the settlement contemplated in this Settlement Agreement as lawful, fair, just, reasonable and adequate, after considering among other things, that the settlement was reached after good faith, arm's length negotiations by experienced and capable class counsel and in the absence of collusion; the amount of the settlement; the likelihood of the Plaintiffs' success in obtaining all relief prayed for; the cost, complexity, and duration of the litigation if pursued through trial; the further disruption to the business activities of the Defendants; the assets of the Defendants; and, any other matters bearing on the best interests of the parties and directing its consummation and that all parties perform in accordance with the terms of this Settlement Agreement;

    b. Permanently and finally certifying, under Rule 23(b)(3) of the Federal Rules of Civil Procedure, the following settlement class for this cause as follows:

> All those individuals admitted as H-2B temporary foreign workers pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(b), who were employed by the Defendants in any capacity from April 14, 2002 through the present.

    c. Providing that members of the class who have duly and timely requested exclusion from the class may thereafter pursue only their own individual remedies, if any, and not any class actions based on the claims in the Plaintiffs' complaint in this action;

      d. Providing for the release of Defendant Alpha Services, L.L.C., its parents, subsidiaries, past and present officers, members, directors, agents, attorneys, subsidiaries, parent corporations, related entities and affiliates, if any, and its respective successors, heirs and assigns, and Defendant Robert Wade Zaharie, his heirs, executors and administrators from all damage and other claims relating to the employment of the Plaintiffs, the Opt-In Plaintiffs, and all other members of the class who do not seek exclusion, their heirs, representatives, agents, attorneys, successors, or assigns, or anyone claiming on their behalf, which have been raised or asserted in this action, or which could have been raised or asserted in this action; and

      e. Dismissing this action with prejudice upon Defendants' satisfaction of their financial obligations as set out in paragraphs 3-5.

## V. MISCELLANEOUS PROVISIONS

20. <u>No Admission of Liability</u>. The Plaintiffs and the Defendants expressly acknowledge and agree that this Settlement Agreement does not constitute an admission of liability by the Defendants.

21. <u>No Interference with Class Members</u>. Defendants and Defendants' Counsel agree that they will not solicit or advise potential class members to request exclusion from the class and will not represent, or arrange representation for, any potential class member in requesting exclusion from the potential class and/or filing a

separate action.

22. <u>No Interference with Opt-In Plaintiffs</u>. Defendants and Defendants' Counsel agree that they will not solicit or advise potential Opt-In Plaintiffs not to file a consent to sue form indicating their consent to join this action. Defendants and Defendants' Counsel agree that they will not involve themselves or interfere with the decision of any Opt-In Plaintiff or potential Opt-In Plaintiff to opt in to or remain involved in this action. Defendants agree to specifically instruct all supervisors, recruiters and any other agents they authorize to do anything with respect to the recruitment, hiring, processing, interviewing, transportation or supervision of any current H-2B workers employed by Defendants (or applicants for H-2B jobs with the Defendants) that they shall not in any way interfere with the decision of any Opt-In Plaintiff or potential Opt-In Plaintiff related to joining or remaining involved in this action.

23. <u>Limited Recruitment of Opt-In Plaintiffs</u>. Plaintiffs' Counsel agree not to actively and directly recruit future Opt-In Plaintiffs other than by sending the court-authorized notice, responding to phone calls and other requests for assistance, and through normal outreach work.

24. <u>Confidentiality</u>. Plaintiffs' Counsel agree not to publicize the monetary amounts of the settlement, except for required disclosures, such as disclosures to the Court or to class members.

25. <u>Waiver</u>. One or more waivers of a breach of any covenant, term, or provision of this Settlement Agreement by any party shall not be construed as a waiver of a subsequent breach of the same covenant, term or provision, nor shall it be considered a

waiver of any other then-existing, preceding or subsequent breach of a different covenant, term or provision.

26.     <u>Binding Effect</u>. This Settlement Agreement shall be binding upon and shall inure to the benefit of the successors, subsidiaries, representatives, assigns, members, officers and employees of each of the parties hereto, and in the case of individuals, to their heirs, executors and administrators.

27.     <u>Headings</u>. The headings of this Settlement Agreement are for purposes of reference only and shall not limit or define the meaning of the provisions of this Settlement Agreement.

28.     <u>Entire Agreement</u>. It is understood and agreed by the Plaintiffs and Defendants that this Settlement Agreement contains the entire understanding between them. No oral understandings, statements, promises or inducements contrary to the terms of this Settlement Agreement exist. The Settlement Agreement cannot be changed or terminated except by the written amendment to this Settlement Agreement signed by counsel for Plaintiffs and the respective Defendants.

29.     <u>Effective Date</u>. This Settlement Agreement is effective as of the date it is approved by, and made an order of, the Court.

**IN WITNESS WHEREOF**, the parties hereto by themselves or by their counsel have agreed to the terms of this Settlement Agreement and have caused this Settlement Agreement to be executed as of May 30, 2006.

Signature of Plaintiffs' Counsel:

_____
Kelley M. Bruner, on behalf of Plaintiffs

Signature of Defendants:

_____
Alpha Services, L.L.C., by Robert Wade Zaharie, its Managing Member and President

_____
Robert Wade Zaharie, for himself personally